## Serago v. East Suburban Hospital

*Michael Louik*, for plaintiffs.

*Charles H. Alpern*, for defendant East Suburban Hospital.

*Edward D. Klym*, for defendant Gibson, McCarvey and Wilson Assoc.

*Steven H. Wyckoff*, for defendant Yoong Oh Nan.

WETTICK, A.J., February 18, 1983—Plaintiffs request this court to compel defendant physicians to produce reports submitted to their insurance carriers describing the treatment that is the subject of this medical malpractice action. Defendants oppose

the motion on the ground that the reports are protected by the attorney-client privilege.

Shortly after this lawsuit was instituted, the insurance carriers of defendant physicians mailed these defendants questionnaires requesting information regarding the claim. Certain defendants allege that they gave the completed questionnaires to the attorneys furnished by the insurance carriers to defend the lawsuit and that the attorneys later forwarded copies of the questionnaires to their insurance carriers. Other defendants allege that they returned the completed questionnaires directly to their insurance carriers. These defendants further allege that these questionnaires were prepared at the request of or in contemplation of their immediately being furnished to counsel.

This court has recently considered the scope of the attorney-client privilege in the context of an insurance situation in Piro v. Bell, 129 P.L.J. 443 (1981), and O'Brien v. Tuttle, 130 P.L.J. 23, 21 D.&C. 3d 319 (1982).

The questionnaires which defendant physicians mailed directly to their insurance carriers are governed by Piro v. Bell, supra. In that case, the insurance carrier sent its claim form to Dr. Bell once it learned that the plaintiff was complaining about his medical care. After Dr. Bell completed the form, he returned it to this insurance carrier. At that time, Dr. Bell had not been sued and was not represented by counsel. After the suit was filed and the insurance carrier provided counsel for Dr. Bell, counsel received a copy of Dr. Bell's completed claim form from the insurance carrier.

Dr. Bell argued that his communication with the insurance carrier came within the attorney-client privilege because this was a confidential communication necessary to secure legal services. In support

of this position, Dr. Bell contended that the insurance carrier should be seen as a representative of the insured's counsel because the information which it obtains will be supplied to counsel for purposes of preparing a legal defense on behalf of the insured. See Insurance Company of North America v. Superior Court of the County of Los Angeles, 108 Cal. App. 3d 758, 166 Cal. Reporter 880 (1980). We found the argument to be without merit because the insured was not protected from the use of the information against his or her interests.

The sole purpose for the attorney-client privilege is to encourage the full disclosure to counsel necessary to secure proper representation by guaranteeing the client that any communication will be used only to promote the client's interests. A communication from the insured to the insurance carrier is not made in this context because there is no guarantee that the information provided by the insured will be used solely for purposes of preparing a defense. Always lurking in the relationship between the insured and the insurance carrier is the question of insurance coverage and there is no prohibition against the insurance carrier using any of the information acquired from the insured as a basis for denying coverage. Consequently, the confidential relationship essential for extending the attorney-client privilege to communications between the insured and the insurance company is missing.

This reason for rejecting the insurance carrier's claim of attorney-client privilege renders irrelevant the factual distinction between this case and Piro that the physician's report in this case was forwarded to the insurance carrier after institution of the lawsuit and the entry of appearance by counsel selected by the insurance carrier. So long as the information is provided initially to the insurance

carrier, the core element of the attorney-client privilege — the guarantee that the information will not be used against the party giving the information — is not present. Consequently, any written reports which defendant physicians initially furnished their insurance carriers are subject to discovery.

The written reports which defendant physicians forwarded to their counsel, copies of which were later forwarded by counsel to the insurance carrier, are governed by O'Brien v. Tuttle, supra. In this case, defendant physician cited the case law protecting communications between jointly represented parties to support his contention that his confidential reports which his counsel furnished the insurance carrier were covered by the attorney-client privilege. Plaintiff contended that we should not characterize the relationship among counsel, the insured, and the insurance carrier as a joint representation by a common attorney for the mutual benefit of both parties because to the extent that the interests of the insured and the insurance carrier differ, counsel will furnish to the insurance carrier for use against the insured any prejudicial information which the insured provided. We agreed that if this description of the relationship were accurate, the attorney-client privilege would not envelop this relation because of the absence of the confidentiality protections necessary to foster the open attorney-client dialogue between counsel and the insured. However, we rejected the plaintiff's description of this relationship, because the case law and the Code of Professional Responsibility impose upon counsel the duty to protect the insured's interests. See D.R. 4-11(B)(2); 5-105(B); Ethical Considerations 4-5 and 4-15; Perkoski v. Wilson, 371 Pa. 553, 92 A.2d 189 (1952); Cowden v. Aetna Casualty and Insurance Company, 389 Pa. 459, 134 A.2d 233 (1957).

This interpretation of the Code of Professional Responsibility is supported by Informal Opinion 1478 of the American Bar Association Committee on Ethics and Professional Responsibility issued on August 11, 1981. The issue before the committee was the responsibility of a lawyer selected by an insurance carrier to the insured with respect to the disclosure to the insurance carrier of information gained in the course of preparing the defense. The committee concluded that a lawyer may not reveal any information to the insurance carrier which might result in the denial of insurance protection to the insured.

In the present action, plaintiffs argue that O'Brien v. Tuttle, supra, is not necessarily controlling, because we do not know whether defendants' counsel routinely turn over all documents received from the insured to the insurance carrier or whether the relationship which counsel has established with the insured and the insurance carrier provides for counsel to protect the interests of the insured against the insurance carrier and, consequently, to divulge information to the insurance carrier only if it is consistent with the insured's interests. We agree. Unless there is an understanding at the outset that counsel's first duty is to the insured, an attorney-client relationship within the meaning of the attorney-client privilege does not exist. Consequently, defendants whose reports have been forwarded to the insurance carrier by their counsel shall produce these reports unless their counsel advises this court that throughout counsel's representation of the insured, the relationship which counsel established with the insured and the insurance carrier provided for counsel to protect the interests of the insured against the insurance carrier.

## ORDER OF COURT

On this February 18, 1983, upon consideration of plaintiffs' motion to compel production of documents, it is hereby ordered that:

(1) Subject to the provisions of paragraph (2), within 20 days defendants shall furnish to plaintiffs copies of any written statements of the individual defendants concerning the care and treatment of plaintiffs.

(2) Defendants need not furnish any written statements described in affidavits of defendants' counsel filed within 20 days which aver that (a) the statement was initially furnished to counsel, (b) at the outset of his or her employment in the case, counsel's relationship with the insured and insurance carrier provided for counsel to protect the interests of the insured against the insurance carrier, and (c) throughout the representation, defendants' counsel has not and will not furnish information to the insurance carrier that may be contrary to the insured's interests.